**SUBDIVISION SERVICES CORPORATION**

v.

**The ZONING HEARING BOARD OF CHARLESTOWN TOWNSHIP and Board of Supervisors of Charlestown Township.**

**Appeal of Charlestown Township.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 17, 2001.
Decided Oct. 11, 2001.

Thomas F. Oeste, West Chester, for appellant.

Christopher H. Schubert, Exton, for appellee.

Before COLINS, J., LEADBETTER, J., and MIRARCHI, Jr., Senior Judge.

COLINS, Judge.

The Board of Supervisors of Charlestown Township (the Township) appeals from the December 28, 2000 decision of the Court of Common Pleas of Chester County (Trial Court), reversing the decision of the Zoning Hearing Board of Charlestown Township (ZHB), to deny the application filed by Subdivision Services Corporation (SSC) to place four two-sided outdoor advertising billboards upon its property.

SSC is the owner of a 53–acre tract of land situate in Charlestown Township, which property is bounded on its northern side by the Pennsylvania Turnpike (Turnpike), on its southern side by Phoenixville Pike, and on its western side by Yellow Springs Road. The subject property is lo-

cated in the Limited Industrial (LI) zoning district.

On or about November 3, 1999, SSC filed an application with the ZHB seeking to erect on its property, four two-sided outdoor advertising billboards, each located at least 500 feet from the other in compliance with 67 Pa.Code, § 445.4(b)(2)(i),[1] and each having sign face dimensions of 14 feet by 48 feet.[2] The sign faces were intended to be angled toward the Turnpike and mounted on a steel supporting poles not to exceed 35 feet above grade.[3]

■ Hearings on the application were conducted before the ZHB on January 15, 2000, February 10, 2000, and April 12, 2000. The ZHB found that the Township zoning ordinance was defective in its blanket prohibition against the placement of outdoor advertising billboards anywhere in the Township. At the same time, however, by written decision dated May 25, 2000, the ZHB denied SSC's application on the basis that placing outdoor billboards on the proposed site would be unreasonable and deleterious to the health, safety, and welfare of Township residents. SSC filed

an appeal, and on December 28, 2000, the Trial Court entered an order reversing the ZHB's decision and granting SSC's application, conditioned upon the latter's removal of trees and foliage to ensure 500 feet of visibility for Turnpike motorists. The present appeal by the Township follows.[4]

On appeal, the Township argues that the Trial Court erred by substituting its judgement for that of the ZHB. Specifically, the Township contends that the Trial Court affirmed the ZHB's determination that obstruction of the proposed billboards by surrounding foliage created a hazardous condition for the public, which finding was supported by substantial evidence. Further, the Township contends that the aforementioned hazard cannot be corrected by the conditions imposed by the Trial Court. Finally, the Township maintains that the Trial Court erred in granting SSC's application subject to conditions that, according to the Township, the Trial Court had no authority to impose, and that were solely within the ambit of the ZHB's authority.

■ Upon review of the record, we concur with the Trial Court's determination

1. 67 Pa.Code § 445.4(b)(2)(i) states, in pertinent part:

Along the interstate system and limited access highways on the primary system, no two sign structures may be spaced less than 500 feet apart; ....

2. 67 Pa.Code § 445.4(b)(1)(i) states:

The maximum area for one sign shall be 1200 square feet with a maximum height of 30 feet and maximum length of 60 feet, inclusive of a border and trim but excluding the base or apron, supports and other structural members.

3. Pursuant to Section 916.1 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* added by Section 99 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10916.1. SSC also

challenged the validity of the Charlestown Township Zoning Ordinance, because it prohibited the erection of outdoor advertising billboard signs anywhere in the Township. In the same decision that is the subject of the present appeal, the ZHB sustained SSC's challenge and found the Township Ordinance to be *de jure* invalid for its blanket preclusion of such signs. That portion of the ZHB's determination was not appealed by the Township.

4. In a zoning appeal where the trial court takes no additional evidence, our scope of review is limited to determining whether the zoning hearing board abused its discretion or committed an error of law. *Zangrilli v. Zoning Hearing Board of Borough of Dormont,* 692 A.2d 656 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 549 Pa. 710, 700 A.2d 446 (1997).

that the ZHB's decision with respect to SSC's application is not supported by substantial evidence. As the Trial Court observes, the Township failed to present any objective evidence at the hearing that would substantiate the ZHB's denial of the application based upon several accidents having occurred at the proposed billboard site because of motorists driving at excessive speeds at or near the curve on the Turnpike. In support of its position, the Township first presented the testimony of Steve Friedman, a neighboring landowner whose property abuts the section of the Turnpike at issue and who posited, "nobody, in my inexpert opinion, goes 65 miles per hour. They go about 90 miles per hour on the curve. I'm not an expert on traffic flow, but, other than that, I'm concerned about the property values. I can't imagine anybody wanting to buy a property when you can basically see nothing but billboards." (N.T., April 12, 2000, p. 89).

The Township also presented the testimony of Frank M. Costanzo, an accident reconstructionist, who testified as to the "dangerous" traffic situation created by the proposed billboards:

[Cross Examination]

Q. You said there's a lot of curvature. I assume you say that has some significance in your design; How much curvature?

A. I don't know the curvature.

Q. Does the curvature comply or not comply with the State's design standards for its highways?

A. I wasn't there to do an analysis of the roadway in regards to the curvature. I don't know that information. . . .

Q. What is dangerous about that curve? . . .

A. Obviously, it is there was a previous accident there.

Q. Do you know what caused that accident?

A. No, I do not.

Q. Well, how can you say it's dangerous? You're an accident reconstruction [sic], and pardon me for getting a little upset. You said there was one accident, and that's evidence of a safety problem, but you don't know how that accident happened?

A. All I know is at that accident the guardrail was damaged and someone departed the roadway.

Q. . . . Isn't it true that you don't know how that accident was caused?

A. That's correct.

Q. It could have been icy and someone could have lost control of the vehicle, or they could have been on drugs or alcohol and lost control of the vehicle. So it doesn't . . . demonstrate any existing safety condition, does it, really? A. No, not one. . . .

Q. If the trees are cleared eastbound, does the curvature of the road present any issues, safety-wise. . . .

A. If the trees are cleared and there's clear visibility for eastbound traffic, then that curve in itself would not present a safety risk.

(N.T., April 12, 2000, pp. 60, 63, 64.) We concur with the Trial Court's conclusion that neither the subjective testimony of Mr. Friedman nor the equivocal testimony of Mr. Costanzo can be deemed substantial so as to justify the ZHB's reliance thereon or to establish that the Township met its evidentiary burden.

We further agree with the Trial Court's determination that clearance of the trees and foliage to the extent of improving visibility is a viable condition to impose upon the grant of SSC's application. In

this regard, we find no merit in the Township's argument that the Trial Court lacks authority to impose such a condition. In *Compton v. The Zoning Hearing Board of Pennsbury Township*, 708 A.2d 871, 874 (Pa.Cmwlth.1998), this Court affirmed the trial court's striking of conditions relating to a nonconforming use involving a liquor license even though the landlowner/applicant had not requested that relief, and stated: "The trial court acted properly in eliminating all conditions that were not liquor neutral." Analogously, if a trial court has authority to eliminate conditions, it also has authority to impose them, provided they have a reasonable relation to the public health, safety, and welfare.

Accordingly, based on the foregoing, we affirm the decision and order of the Trial Court.

### ORDER

AND NOW, this 11th day of October 2001, the order of the Court of Common Pleas of Chester County filed on December 28, 2000 in the above-captioned matter is affirmed.