17 A.3d 455 (2011)
Najib ABOUD, Nasra Aboud, and Baba D's, Inc.
v.
The CITY OF PITTSBURGH DEPARTMENT OF PLANNING, City of Pittsburgh and James M. Quinn and JMQ-1.
Appeal of: The City of Pittsburgh Department of Planning and the City of Pittsburgh.
No. 11 C.D. 2010.
Commonwealth Court of Pennsylvania.
Argued November 9, 2010.
Decided March 18, 2011.
*456 Krista-Ann M. Staley and Stephen L. Korbel, Pittsburgh, for appellant City of Pittsburgh Department of Planning.
Elaine J. Wizzard, Assistant City Solicitor, Pittsburgh, for appellant City of Pittsburgh.
Lisa G. Michel, Pittsburgh, for appellees Najib Aboud, Nasra Aboud and Baba D's, Inc.
Brendan B. Lupetin, Pittsburgh, for appellees James M. Quinn and JMQ-1.
BEFORE: McGINLEY, Judge, and LEAVITT, Judge and BUTLER, Judge.
OPINION BY Judge McGINLEY.
The City of Pittsburgh Department of Planning (Planning) and the City of Pittsburgh (City) (collectively, the City) appeal from an order of the Court of Common Pleas of Allegheny County (common pleas court) that granted Najib Aboud and Nasra Aboud, owners of Baba D's Inc. (Baba D's), (collectively, the Abouds) a conditional use to operate a restaurant with a liquor license. The common pleas court also granted James M. Quinn's, owner of JMQ-1, (Quinn) request for occupancy and building permits to operate a restaurant with a liquor license.[1]

*457 A. The Abouds' Zoning Appeal.

On January 23, 2009, the Abouds filed an appeal and alleged:
2. Babad's, Inc. is a Pennsylvania business corporation[[2]] . . . that operates a restaurant at 2116 Carson Street. Najib and Nasra Aboud are shareholders of the corporation.
3. The Department of Planning . . . is responsible for the issuance of occupancy permits and administering land development within said City. The Pittsburgh City Council is it [sic] legislative body, but acted in a quasi-judicial capacity in the instant matter.
4. On October 23, 2007, the Appellant [the Abouds] applied for and received a [sic] occupancy permit for [sic] the Department of Planning to operate a restaurant without a liquor license . . . . (emphasis added).
5. On or about December 19, 2007, Appellants [the Abouds] applied for a [sic] occupancy permit for a restaurant with a liquor license for the same property. (emphasis added).
6. The December 19, 2007 application was identical to the October 23, 2007 application except the later application added a liquor license to the application (emphasis added).
7. Solely for the reason that the Appellant's [the Abouds'] restaurant would have a liquor license it treated the December 19, 2007 application as a conditional use under the Pittsburgh City Code. (emphasis added).
. . . .
[9.[3]] On September 23, 2008, the City of Pittsburgh Planning Commission conducted a hearing and favorably recommended approval of the conditional use application subject to the following conditions, which were agreed upon by the applicant. . . . (emphasis added).
[10.] The matter was then referred to City Council for a hearing and final action.
[11.] On December 15, 2008, City Council conducted a hearing and denied Appellant's [the Abouds'] conditional use application. (emphasis added).
[12.] The denial of the Appellants [sic] [the Abouds'] conditional use application was illegal for the following reasons: (emphasis added).
. . . .
(c) The applicable ordinance restricting restaurants, Pittsburgh Code, Title nine (Zoning), Article V, § 911.04, with liquor licenses is illegal, in that the Pennsylvania Liquor Control Board is vested with the exclusive jurisdiction to determine whether a restaurant shall have a liquor license and the number of liquor licenses that are permitted within a given area; (emphasis added).
(d) Said ordinance as enforced is not a conditional use, but a de facto ban on restaurants with liquor licenses. . . . (emphasis added).
Zoning Appeal, January 23, 2009, Paragraphs 2-7 and 9-12 at 1-4; R.R. at 89a-92a.

*458 The Common Pleas Court's Disposition Of The Abouds' Appeal.

The common pleas court ordered the parties to file briefs on the issue of whether City Council's amendment to the Pittsburgh Zoning Code (Zoning Code) was invalid because of the preemption doctrine. The common pleas court concluded:
This case involves two separate lawsuits questioning the validity of a portion of the Pittsburgh Zoning Code ("the Code") that deals with restaurants and liquor licenses.

The first matter is an appeal which arises from the decision of the . . . City Council dealing with property . . . owned by Appellants Najib Aboud, Nasra Aboud and Baba D's, Inc [the Abouds] . . . The Ordinance which was passed by City Council on July 24, 2007, limits the number of restaurants with liquor licenses in LNC districts. . . . In September 2008, the Planning Commission recommended approval. On December 15, 2008, City Council conducted a hearing and denied the conditional use application.
. . . .
The Ordinance distinguishes between restaurants and restaurants with liquor licenses in LNC zoning districts. The Code provides for a saturation limit for liquor licenses within the LNC zoning districts. . . .
. . . Title 9, Article V Section 911.04 is not liquor neutral because it only imposes restrictions on restaurants with liquor licenses. . . .
Despite the fact that the liquor industry remains highly regulated by the Commonwealth, local municipalities even before the 1994 Amendment had the power to promulgate and enforce appropriate liquor neutral zoning control. Zoning controls that are not liquor neutral invade the province of the LCB [Liquor Control Board].

The evidence shows that the Department of Planning initially approved the restaurant without a liquor license [the Abouds]. Two months later, however, Baba D's [the Abouds] was [sic] denied when they [sic] applied for a zoning certificate for a restaurant with a liquor license for the same property. Therefore, clearly Ordinance Title Nine, Article V, § 911.04 is not liquor neutral and is an infringement on the power of the Liquor Control Board and is invalid. (emphasis added).
Opinion of the Common Pleas Court, December 9, 2009, at 5.

I. Whether The City May Establish A Saturation Point For Restaurants With Liquor Licenses?
Initially, the City contends[4] that Section 493.1 of the Liquor Code[5], 47 P.S. § 4-493.1, clearly provides that municipalities possess the authority to regulate local zoning which includes the right to determine where restaurants with liquor licenses are located. Specifically, the City asserts that Section 911.04A.99 of the Zoning Code does not restrict or regulate the purchase, sale, possession, consumption, importation, and transportation of alcohol where such alcohol uses are strictly controlled and regulated by the Liquor Code.
The Abouds respond:

*459 The municipality has the authority to determine by its zoning ordinance whether a restaurant is a permitted use in a zoning district, but if a restaurant is a permitted use it cannot by ordinance control whether that restaurant may have a license to serve liquor because that power exclusively belongs to the LCB. (emphasis added).
Brief of Appellees Najib Aboud, Nasra Aboud and Baba D's, Inc., Summary of Argument at 5.
Section 911.04A.99 (Restaurants with Liquor License (Limited)) of the Zoning Code provides:
(a) In LNC [Local Neighborhood Commercial] Districts greater than two million (2,000,000) square feet Restaurant with Liquor License (Limited) uses shall be subject to the following standard in LNC Districts greater than two million (2,000,000) feet.
(1) Saturation in an LNC District greater than two million (2,000,000) square feet is determined by using the square footage of the entire district and the number of Restaurants with Liquor License (both Limited and General combined) within the entire district. Saturation is defined as one (1) Restaurant with Liquor License (both Limited and General combined) per fifty thousand (50,000) total square feet in the district. The determination of saturation does not apply to any discreet portion of the district but rather to the district as a whole.
(2) Once saturation is reached, all new applicants for Restaurants with Liquor License (Limited or General) must meet the standards set forth in this Code for a Conditional Use. (emphasis added).
Title Nine, Section 911.04A.99 of the Pittsburgh Zoning Code (Effectively Updated through June 19, 2009), at 2-3; R.R. at 3a-4a.
Additionally, Section 493.1[6] of the Liquor Code, 47 P.S. § 4-493.1, provides that "[n]othing in this act shall be construed to preempt the right of any municipality to regulate zoning and enforce any local ordinance and codes dealing with health and welfare issues."
In Compton v. Zoning Hearing Board of Pennsbury Township, 708 A.2d 871 (Pa. Cmwlth.1998), John McFadden (McFadden) had applied for the removal of certain conditions imposed by the Pennsbury Township Zoning Hearing Board (ZHB) after the former owners of a nonconforming restaurant acquired a liquor license.[7] The ZHB modified the 1984 conditions which now required "(a) the dispensing of alcohol only with the service of meals or refreshments, (b) the discouragement of the sale of alcohol for consumption off the premises, and (c) the limitation of hours for the sale of alcohol, although expanding the time limits imposed by the 1984 conditions." Id. at 873. Protestors appealed to the Court of Common Pleas of Chester County (trial court) and alleged that the ZHB had improperly permitted the sale of alcohol in its 1984 decision and again improperly allowed the expansion of the use of alcohol in its 1996 decision. The trial court denied Protestors appeal and "vacated *460 conditions a, b, and c as they were stated in both the 1984 and the 1996 decisions." Id. at 873. The trial court, concluded that "[i]nterpreting the language of the amendment [Section 493.1 of the Liquor Code] . . . municipalities are still limited to `liquor neutral' zoning regulations and that the ZHB here went far beyond anything that could be construed as zoning when it imposed conditions a, b, and c." (emphasis added). Id. at 873.
On appeal, Objectors argued, among other things, "whether zoning controls over the operation of a nonconforming use have been pre-empted by the Liquor Code." Id. at 873. This Court concluded:

Objectors recognize that municipalities have long had subject matter jurisdiction to impose liquor neutral conditions on the operations of liquor licensees. . . .
. . . .
. . . Objectors contend that the trial court erred in interpreting the [1916] Delaware Taverns [Tavern, Inc. v. Zoning Board of Adjustment, 657 A.2d 63 (Pa.Cmwlth.1995)] case, which was filed after the 1994 amendment, but decided on the basis of the pre-amendment law. The court in Delaware held that zoning regulations prohibiting cabarets, with or without liquor licenses, in certain geographic location [sic] within the city, were not pre-empted by the Liquor Code, but that municipalities are still limited to liquor neutral zoning regulations. The Delaware court discussed the pervasiveness of the regulation scheme controlling the alcoholic beverage industry, but recognized that municipalities could exercise appropriate zoning controls over liquor licensees. . . . Significantly, the Delaware court stated:
Even though we conclude that Section 493.1 should not be applied retroactively, in reality, that holding makes little difference in our disposition of this case. Despite the fact that the liquor industry remains highly regulated by the Commonwealth, local municipalities even before October 5, 1994 had the power to promulgate and enforce appropriate liquor-neutral zoning controls.

Id. at 68. Objectors recognize, as does this Court, that no other case has been decided that in any way interprets the 1994 amendment. However, we believe that the amendment was, in essence, codifying prior case law. Based on the language from the Delaware opinion quoted above and in light of the language of the amendment, we hold that zoning boards may still only place conditions on uses that are liquor neutral. Thus, the trial court's decision striking conditions a, b, and c was proper. These three conditions were not liquor neutral and invaded the province of the Liquor Control Board that is charged with the responsibility of overseeing and regulating the sale of alcohol. (emphasis added).
Id. at 874.
Like the zoning ordinance in Compton, Section 911.04A.99 of the Zoning Code is not liquor neutral and encroaches upon the domain of the LCB for the following reasons.
First, Section 911.04A.99 of the Zoning Code is a regulatory attempt by the City to legislate the location and number of restaurants with liquor licenses once the saturation level is reached in a LNC District of greater than two million square feet. The City strenuously asserts that Section 911.04A.99 of the Zoning Code is liquor neutral because the Ordinance treats restaurants without liquor licenses identical to restaurants with liquor licenses. However, this Court's review of the City's approval procedures implemented once the saturation level is reached discriminates against restaurants with liquor *461 licenses as opposed to restaurants without liquor licenses.
Initially, Section 922.06 of the Zoning Code provides that restaurants with liquor licenses may apply for a conditional use once the saturation level is met. Section 922.06.B (Notice) of the Zoning Code provides that when the application for a conditional use is completed, the Zoning Administrator "shall schedule a public hearing before the Planning Commission . . . [and] shall give at least twenty-one (21) days public notice of the Planning Commission Hearing . . . to all property owners within a one hundred fifty (150) foot radius of the subject property. . . ." Section 922.06.B of the Zoning Code; R.R. at 8a. Section 922.06.C (Hearing and Action by the Planning Commission) of the Zoning Code provides that the Planning Commission "shall recommend to approve, approve with conditions, approve in part, deny or deny in part the application within forty-five (45) days of the Commission hearing." Section 922.06.C of the Zoning Code; R.R. at 8a. Next, Section 922.06.D (Hearing and Action by City Council) of the Zoning Code provides that "City Council shall hold a public hearing on the Conditional Use application within forty-five (45) days of the Planning Commission's action on the application. . . [a]fter the public hearing, Council shall act to approve [or] . . . deny . . . the application within forty-five (45) days of the council hearing. . . ." Section 922.06.D of the Zoning Code; R.R. at 9a.
To the contrary, a restaurant without a liquor license may seek a special exception.[8] Section 922.07.A (Initiation) of the Zoning Code provides that "[a]n application for Special Exception approval may be filed by the owner. . . ." Section 922.07.A of the Zoning Code; R.R. at 11a. Section 922.07.B (Notice) of the Zoning Code provides that "the Zoning Administrator shall schedule a public hearing before the Zoning Board of Adjustment . . . at least twenty-one (21) days notice of the hearing. . . ." Section 922.07.B; R.R. at 11a. Section 922.07.C (Hearing and Action) of the Zoning Code provides that "[a]fter the public hearing, the Board shall act to approve, approve with conditions, approve in part, deny or deny in part the application, within forty-five (45) days of the Board hearing." Section 922.07.C of the Zoning Code; R.R. at 12a.
In conclusion, a restaurant with a liquor license that seeks a conditional use must proceed to two separate hearings; first, before the Planning Commission, then to a second hearing before City Council. As a result, approval of a conditional use application may take up to 156 days. In contrast, a restaurant without a liquor license that seeks a special exception is subject to just one hearing before the Zoning Board of Adjustment. Approval for a special exception must be acted upon within a maximum of 66 days. Given the additional burden of a second public hearing and the disparity of time for final approval for a conditional use compared to a special exception, the Zoning Code places additional burdens on restaurants with a liquor license that attempt to open and operate in LNC districts once the saturation level is exceeded. Clearly, Section 911.04A.99 of the Zoning Code is not liquor neutral.
Second, here Section 911.04 of the Zoning Code directly conflicted with the Liquor Code because the City attempted to regulate the location of the Abouds' restaurant after the LCB issued the Abouds a liquor license.
*462 Critically, Section 401 the Liquor Code, 47 P.S. §§ 4-401, provides that "[s]ubject to the provisions of this act . . . the board shall have authority to issue a retail liquor license for any premises kept or operated by . . . a restaurant . . . and to keep on the premises such liquor and . . . to sell the same and also malt or brewed beverages. . . ."
Also, Section 404 of the Liquor Code, 47 P.S. § 4-404, relevantly provides "[t]hat the board shall refuse any application for a new license . . . if, in the board's opinion, such new license . . . would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place proposed to be licensed. . . ."[9]
Section 403(i) of the Liquor Code, 47 P.S. § 4-403(i), also provides that "[u]pon receipt of an application for a new license or transfer of an existing license to a new location, the board shall immediately notify, in writing, the municipality in which the premises proposed to be licensed are located." (emphasis added).
In conjunction with Section 403(i) of the Liquor Code, 40 Pa.Code § 17.11 provides:
(a) When location is at issue. When an application has been filed for a new retail liquor license . . . or the transfer of these licenses to a premises not then licensed, or for the extension of premises of these licenses, a protest may be filed with the Board. . . .
. . . .
(d) Notice to Board. A valid protest is intended to alert the Board of the fact and nature of protest. . . . (emphasis added).
(e) Need to intervene. Only valid protests brought under subsection (a), relating to when location is at issue, render the protestant a party to the proceeding. A separate petition to intervene is not required for this purpose. . . . (emphasis added).
Here, pursuant to the Liquor Code, the LCB exercised its exclusive authority to review an application for a liquor license to sell alcohol submitted by the Abouds. After written notice to interested neighbors and the City, which chose not to participate in the licensing proceedings, the LCB determined that the liquor license issued to the Abouds did not have a detrimental effect on the welfare, health, peace and morals of the neighbors of the Southside before the LCB issued the liquor license to the Abouds. For the City to now claim that the Abouds may not sell alcohol at their restaurant directly conflicts with the preemption doctrine under the Liquor Code. "The preemption doctrine establishes a priority between potentially conflicting laws enacted by various levels of government. Under this doctrine, local legislation cannot permit what a state statute or regulation forbids or prohibit what state enactments allow." (emphasis added). Huntley & Huntley v. Borough Council of the Borough of Oakmont and the Borough of Oakmont, 600 Pa. 207, 220, 964 A.2d 855, 862 (2009). "Additionally, a local ordinance may not stand as an obstacle to the execution of the full purposes and objectives of the Legislature." Id. at 220, 964 A.2d at 863. The common pleas court did not err as a matter of law when it determined that Section 911.04 of the Zoning Code "infringed on the power of the Liquor Control Board." Opinion of the Common Pleas Court at 5.

*463 B. Quinn's Mandamus Complaint.

On December 12, 2008, Quinn filed a complaint in mandamus and alleged:
5. In June of 2006, Plaintiff Quinn purchased property at 1021-1023 East Carson Street (hereinafter "the Property"), located in the South Side Section, City of Pittsburgh . . . . The Property is a three-story building consisting of two commercial storefronts on the first floor, and two apartments located on the second and third floors. Plaintiff [Quinn] intended to lease the front floor to . . . JMQ to open and operate a restaurant with a bar on the first floor of the Property. (emphasis added).
6. On or about June 30, 2006, Plaintiff Quinn began negotiations to purchase a Pennsylvania liquor license. A liquor license was secured and under agreement of sale in July, 2006, and the liquor license transfer placard was placed in the window of the property on July 30, 2006, wherein the formal LCB transfer of this liquor license for the property was begun. The license was to be solely owned by . . . JMQ.
7. In November of 2006, Plaintiffs[[10]] [Quinn] obtained sufficient plans for remodeling the Property, and Plaintiff Quinn and Plaintiff JMQ applied for an occupancy permit and a building permit as their interests appeared. (emphasis added).

8. Plaintiffs' [Quinn] were in compliance with the current zoning ordinances and the permits should have been issued.
9. On or about November 27, 2006, Defendant City refused to allow Plaintiffs [Quinn] to file full applications for either permit, contending that possible changes in zoning laws were being considered by City Council which could effect [sic] the issuance of the permits.[[11]] (emphasis added).
10. On May 23, 2007, the Pennsylvania Liquor Control Board formally granted the liquor licenses to Plaintiff JMQ [Quinn] for use at the Property. (emphasis added).
11. It was not until July, 2007 that City Council passed an Ordinance amending the Pittsburgh Code of Ordinances, Title Nine (Zoning), Article V, § 911.04 . . . [t]he Ordinance limits the number of restaurants/bars that can be operated in the area of East Carson Street on the South Side of Pittsburgh. . . . (emphasis added).
12. Following acquisition of the liquor license, Plaintiffs [Quinn] finalized the plans to remodel the Property into a restaurant with a bar, and again sought an occupancy permit for Plaintiff JMQ for the Property to operate the restaurant and bar.
13. In addition to denying Plaintiff JMQ's request to apply for a building permit, Defendants [Planning and City] again denied Plaintiff JMQ's request for an occupancy permit.[[12]] (emphasis added).

*464 Count I

Mandamus
18. As a result of Defendant's [Planning's] action, Plaintiffs [Quinn] are now precluded from obtaining the building and occupancy permits for the Property for the purpose of developing and operating a restaurant with a bar to which permits they were entitled. (emphasis added).
. . . .
WHEREFORE, Plaintiffs [Quinn] request that this Honorable Court issue a Writ of Mandamus to compel Defendants [Planning and City] to issue Plaintiffs [Quinn] a building and occupancy permit for a restaurant with a bar. . . .

Count II

Declaratory Judgment
22. The Ordinance violates the Constitutions of the United States and the Commonwealth of Pennsylvania in that it deprives Plaintiffs [Quinn] of the lawful use of their property without due process.
. . . .
24. Furthermore, the Ordinance is an unlawful infringement upon the power of the Pennsylvania Liquor Control Board (PLCB). The Pennsylvania Liquor Code vests the PLCB with exclusive power to control and regulate the business of dispensing liquor in the Commonwealth of Pennsylvania. By limiting the number of restaurants with bars in the area surrounding East Carson Street, Defendants [Planning and City] are impermissibly seeking to regulate the business of dispensing liquor in the areas so designated in the ordinance. (emphasis added).
Complaint for Mandamus, December 12, 2008, Paragraphs 5-13, 18, 22, and 24 at 1-4; R.R. at 21 a-24a.
The City denied the allegations and asserted in its new matter:
21. Thus, the Zoning Board of Adjustments was the proper body to hear Plaintiffs' [Quinn] arguments regarding whether they were subject to the Ordinance. Plaintiffs [Quinn] had thirty (30) days from the zoning administrator's decision to appeal to the Zoning Board of Adjustment. . . .
22. Plaintiffs [Quinn] had two options when their permits were not approved over-the-counter: first . . . Plaintiffs [Quinn] could have appealed to the Zoning Board of Adjustment; second, Plaintiffs [Quinn] could have applied for the conditional use that may have allowed them to open their restaurant. (emphasis added).
23. While it is clear that this court does not have jurisdiction over this matter, it is also clear that this case is not ripe for review because Plaintiffs [Quinn] failed to exercise or exhaust their statutory remedies. (emphasis added).
24. Plaintiffs [Quinn] should have gone through the conditional use process required by the Code or Plaintiffs [Quinn] should have appealed the decision of the zoning administrator to the Zoning Board of Adjustment. (emphasis added).
25. Plaintiffs [Quinn] ask for mandamus so that this court will compel the City to grant Plaintiffs' [Quinn] zoning approval. Mandamus should not be granted because Plaintiffs [Quinn] do not have a clear right to relief in this matter. Indeed, Plaintiffs [Quinn] were subject to validly pending zoning amendment and were required to comply *465 with that legislation. (emphasis added).
26. The Liquor Code, while nearly exhaustive, preserves some rights of municipalities . . . to regulate zoning. . . . (emphasis added).
Answer and New Matter, January 21, 2009, Paragraphs 21-26 at 4-5; R.R. at 79a-80a.

The Common Pleas Court's Disposition Of Quinn's Complaint For Writ Of Mandamus And Action In Declaratory Judgment.
The common pleas court stated:
The second matter involves Intervenor[[13]]. . . Quinn. Quinn applied for a liquor license on the property. In November 2006, Quinn applied for occupancy and building permits to remodel the property. The Department of Planning did not permit Quinn to file full applications because of possible changes in the zoning laws. Quinn's liquor license was secured on May 23, 2007. The Ordinance was passed by City Council on July 24, 2007. Quinn again attempted to apply for permits and was again denied. Quinn filed a Complaint for Writ of Mandamus and an Action in Declaratory Judgment compelling the City to issue the permits and to declare the Ordinance unlawful and void.[14]
Opinion of the Common Pleas Court at 2. As a result the common pleas court ordered that "[s]ince the Zoning Ordinance in question is unlawful, Intervenor Quinn's request for a Writ of Mandamus is granted. . . [t]he City of Pittsburgh is hereby [o]rdered to issue Quinn's requested occupancy and building permits." Order of the Common Pleas Court, December 9, 2009, at 1.

II. Whether Quinn May Challenge A Portion Of The Zoning Code After He Failed To Initially Appeal To The Zoning Board Of Adjustment?
The City next contends that Quinn was first required to file an appeal with the Zoning Board of Adjustment concerning any challenges to the validity of Section 911.04 of the Zoning Code before seeking *466 mandamus and declaratory relief. This Court agrees.
Section 7541 of the "Declaratory Judgments Act", 42 Pa.C.S. § 7541 provides:
(a) General rule.This subchapter is declared to be remedial. Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered.
. . . .
(c) Exceptions.-Relief shall not be available under this subchapter with respect to any: (emphasis added).
(2) Proceedings within the exclusive jurisdiction of a tribunal other than a court. (emphasis added).
(3) Proceedings involving an appeal from an order of a tribunal. (emphasis added).
"[A]n action seeking declaratory judgment is not an optional substitute for established or available remedies and should not be granted where a more appropriate remedy is available." Pittsburgh Palisades Park, LLC v. Pennsylvania State Horse Racing Commission, 844 A.2d 62, 67 (Pa.Cmwlth.), appeal quashed, 578 Pa. 365, 852 A.2d 310 (2004), appeal denied, 581 Pa. 702, 864 A.2d 1206 (2004).
Here, Section 923.02.B (Powers) of the Zoning Code provides:
The Zoning Board of Adjustment shall have the following powers:
1. To hear and decide appeals where it is alleged that there is error in any order, requirement, decision or determination made by the Zoning Administrator or the Chief of the Bureau of Building Inspection in the administration of this Code, and upon appeal, to interpret any provision of this Code where its meaning or application is in question; (emphasis added).
. . . .
3. To hear and decide, upon appeal from the grant or denial of zoning approval with respect to a specific application, issues of the validity of any provision of this Code. . . . (emphasis added).
Section 923.02.B of the Zoning Code; R.R. at 14a.
Last, Section 923.02.H (Appeal of Zoning Board of Adjustment Decisions to Court) of the Zoning Code Provides that "[a]ny party aggrieved by a decision of the Zoning Board of Adjustment, may within thirty (30) days, appeal the decision to the Court of Common Pleas of Allegheny County under the Local Agency Law, 2 Pa.C.S. Sections 751-754. (emphasis added).
This Court must conclude that the common pleas court lacked jurisdiction to grant Quinn declaratory relief and order the City to issue occupancy and building permits.[15]
Accordingly, this Court affirms as to the common pleas court's order that Section 911.04 of the Zoning Code is invalid. This Court vacates the common pleas court's order directing the City to issue occupancy and building permits to Quinn. Quinn may, without prejudice, reapply for such permits.

*467 ORDER

AND NOW, this 18th day of March, 2011, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed as to the grant of a conditional use to Najib and Nasra Aboud and Baba D's, Inc. The part of the Court's order directing the City of Pittsburgh Department of Planning to issue occupancy and building permits to James M. Quinn and JMQ-1 is vacated. James M. Quinn may without prejudice apply for the occupancy and building permits.
NOTES
[1] On April 1, 2009, the common pleas entered the following order on the Abouds' appeal and Quinn's mandamus complaint:

1. Briefs are due by May 1, 2009, on the issue of whether the Ordinance limiting the number of liquor licenses in the City of Pittsburgh's LNC [Local Neighborhood Commercial] Zoning District is an infringement of the power of the Pennsylvania Liquor Control Board and is preempted by the Pennsylvania Liquor Code;
2. The case filed at G.D. 08-26513 [Quinn's mandamus complaint] is stayed pending the resolution of these issues;
3. On oral motion of Attorney John E. Quinn; James M. Quinn and JMQ-1 are permitted to intervene in the above-captioned case. (emphasis added).
Order of Court of Common Pleas, April 1, 2009, Paragraphs 1-3 at 1; Reproduced Record (R.R.) at 95a.
[2] Babad's Inc. is Baba D's corporate name and should not be confused with the restaurant's name.
[3] The Abouds paragraphs are numbered incorrectly in their zoning appeal.
[4] This Court's review is limited to a determination of whether the common pleas court abused its discretion, committed an error of law, or reached a conclusion not supported by substantial evidence. Groner v. Monroe County Board of Assessment Appeals, 569 Pa. 394, 803 A.2d 1270 (2002).
[5] Act of April 12, 1951, P.L. 90, as amended, 47 P.S. §§ 1-101-8-803.
[6] Section 493.1 was added by the Act of October 5, 1994, P.L. 522.
[7] "The ZHB . . . had [originally] attached conditions (a) requiring the serving of alcohol only in conjunction with the serving of meals, (b) disallowing a bar, (c) limiting the time during which alcohol could be served, and (d) requiring a barrier to limit access to the roadway." Id. at 872. "McFadden sought the removal of the 1984 conditions (a, b, and c), and contending that they hampered the continuance of the business as a viable entity and rendered the sale of the business unfeasible." Id. at 872.
[8] Section 911.22 of the Zoning Code provides that "[r]estaurant (general) means a Restaurant with a gross floor area of 2,400 or more. . . [in LNC Zoning District]" may seek a special exception. Section 911.22 of the Zoning Code; R.R. at 2a.
[9] Also, Section 404 of the Liquor Code, 47 P.S. § 4-404, provides that the Board may refuse a license "if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground. . . ." (emphasis added).
[10] Because this Court refers to Quinn and JMQ in the singular, "Quinn", the term Plaintiffs as it appears in the appeal is not grammatically incorrect.
[11] Pursuant to the Zoning Code, pending amendments are treated as if passed once the amendments are introduced to City Council.
[12] Quinn did not appeal the decision of the Zoning Administrator to the Zoning Board of Adjustment or submit a second application for a conditional use. Rather, Quinn filed an action against the Pittsburgh Department of City Zoning in the common pleas court and demanded zoning approval for the proposed restaurant with liquor license and a declaration that the Ordinance was unlawful and void.
[13] The City also filed preliminary objections to Quinn's mandamus complaint and asserted:

2. The City of Pittsburgh raises four objections to Plaintiffs [Quinn] complaint:
a. first, this court does not have jurisdiction over this matter;
b. second, this matter is not ripe for review;
c. third, Plaintiffs [Quinn] were subject to a validly pending amendment to the Code and have no right to mandamus; and
d. fourth, the pending amendment in question is not preempted by the Liquor Code, and Plaintiffs [Quinn] request for a declaratory judgment cannot be granted.
Preliminary Objections, January 6, 2009, Paragraph 2 at 3; R.R. at 35a. The common pleas court did not rule on the City's preliminary objections but allowed Quinn to intervene in the Abouds' zoning appeal.
[14] Quinn also made the following argument concerning Section 911.04 of the Zoning Code:

The Ordinance [Section 911.04.A.99] is not "liquor neutral" because it places restrictions on restaurants with liquor licenses attempting to open and operate in LNC districts that have exceeded the saturation level. However, the Ordinance [Section 911.04.A.99] does not place the same restrictions on restaurants without liquor licenses attempting to open and operate in the same LNC districts. Through these restrictions, the Ordinance [Section 911.04.A.99] is, in effect, regulating the location of establishments with liquor licenses. Such legislative action is an impermissible infringement upon the power of the Liquor Control Board. Accordingly, the Ordinance [Section 911.04.A.99] is invalid. (emphasis added).
Brief for Appellees James M. Quinn and JMQ-1, Summary of Argument, at 5.
[15] Because the common pleas court properly determined that Section 911.04A.99 was invalid, this Court need not address the City's remaining argument:

3. Whether the trial court properly overturned the denial of a conditional use, where the trial court did not find that Pittsburgh City Council committed an abuse of discretion or made findings not supported by substantial evidence?
Brief for Appellants, Statement of the Questions Involved at 4.