**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3680-22

MIRCO KAJA,

     Plaintiff-Appellant,

v.

BOROUGH OF WEST
LONG BRANCH
PLANNING BOARD,

     Defendant-Respondent.

_____

> Argued September 17, 2024 – Decided February 3, 2025
>
> Before Judges Gilson and Bishop-Thompson.
>
> On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0086-22.
>
> R.S. Gasiorowski argued the cause for appellant (Gasiorowski & Holobinko, attorneys; R.S. Gasiorowski, on the briefs).
>
> Michael A. Irene, Jr. argued the cause for respondent.

PER CURIAM

In this action in lieu of a prerogative writs, plaintiff Mirco Kaja appeals from the July 14, 2023 order, denying his challenge to a planning board's decision to deny his application for a variance to subdivide his single-family residential property and construct a second single-family home. Having considered the arguments, the record, and the applicable law, we affirm substantially for the reasons set forth by the trial court in its comprehensive written decision.

I.

Plaintiff owns and resides in a two-story single-family home with a two-car attached garage at 91 Parker Road in the Borough of West Long Branch, identified as Block 70, Lot 29. The existing lot size was 26,487.75 square feet, 150 feet wide, with a 43.6 feet front yard setback, a 52.2 feet side yard setback, a 71.9 feet rear yard setback, 6.8% maximum lot coverage, and 11.4% maximum impervious coverage. Plaintiff's property is a fully conforming corner lot in the R-22, single family residential zone.

On April 21, 2021, plaintiff applied to the Borough's Planning Board to subdivide the property into two non-conforming lots with bulk variance relief. Specifically, he sought approval to renovate the existing residence and build a detached garage on the proposed Lot 29.01, and approval to build a thirty-foot

A-3680-22

long home on the proposed Lot 29.02.  If subdivided, both lots would be undersized.

In that regard, the removal of a portion of plaintiff's existing home, with the attached garage, on Lot 29.01 would result in only 76% of the required lot area (17,168 square feet proposed; 22,500 square feet required) and only 58% of the required lot width (87.87 feet proposed; 150 feet required).  Plaintiff planned to install a pool and raise the pool patio behind his residence, causing the proposed new detached garage to be deficient in its rear yard setback.

The proposed thirty feet home on Lot 29.02 would consist of only 41% of the required lot area (9,319 square feet proposed; 22,500 square feet required) and only 41% of the required lot width (62.13 feet proposed; 150 feet required). That home would be deficient in each side yard setback (14.44 feet and 17.70 feet proposed; 20 feet required for each), as well as total combined side yard setbacks (32.14 feet proposed; 50 feet required).

Plaintiff also proposed three accommodations to appease any issues caused by the proposed construction:  (1) plant additional evergreens on the rear property line to shield any light that would shine from his car's headlights onto the apartment complex behind him whenever he would pull into the proposed rear garage; (2) install a drywell system to handle any stormwater runoff from

3

the increased imperviousness of the property; and (3) build a sidewalk along Parker Road that would connect to the sidewalk along Monmouth Road.

On October 12, 2021, the West Long Branch Planning Board (Planning Board) held a public hearing. Represented by counsel, plaintiff testified concerning his overall goal and plan for the proposed property. He contended that subdividing the lot would be a way "to give back [to the community] in a way . . . [that] improves the town . . . by building another home." When asked whether his application contained plans, plaintiff conceded no architectural, drainage, or grading plans had been submitted with his application. A traffic study had not been conducted nor had plaintiff spoken with any of his neighbors.

Plaintiff presented testimony from his professional planner, Christina Nazzaro Cofone, who testified plaintiff's proposal was supported under the N.J.S.A. 40:55D-70(c)(2) criteria. Cofone further testified plaintiff's proposal would "create[] investment in the area . . . [and] create[] a variety of housing types." Cofone referenced the neighborhood inventory and stated that many of the properties surrounding the subject property were similarly sized to the proposed lots, including the lot immediately adjacent to the proposed lots and most of the lots on the south side of Parker Road. Four lots are 9,300 square feet or less, roughly the same size or smaller than the proposed size of Lot 29.02.

4

Another thirteen nonconforming lots existed on Parker Road and Summers Avenue, but Cofone did not know if those properties were created by variance or were grandfathered. Cofone stated the overall lot development scale was proportionate to and harmonious with the surrounding community.

The Planning Board also heard from several members of the public who were concerned about the proposal. Two members of the public, Larry Shapiro and Frank Scaquorchio, testified that all the nonconforming lots on Parker and Summers Avenue were built prior to the creation of the R-22 zone and were thus grandfathered. Shapiro also presented the Planning Board with a copy of the unpublished case addressing that issue and asserted that the Planning Board had found in that case that those properties were grandfathered into the R-22 zone.

The public was concerned that the creation of another driveway close to Parker Road's intersection with Monmouth Road would significantly worsen the traffic on Parker Road and increase the frequency of backups onto Monmouth Road. Cofone acknowledged that there would be an increase in the number of vehicles accessing the property but expressed that "I am hard[-]pressed to find that one additional 9,000-square foot lot is going to have a remarkable difference on the traffic impact in this area."

A-3680-22

At the conclusion of the hearing, the Planning Board unanimously voted to deny plaintiff's application, which was memorialized in a resolution on December 14, 2021.  In its resolution, the Planning Board found that "the applicant has failed to satisfy the 'positive criteria' and the 'negative criteria' necessary to support granting bulk ('C') variance relief."  Regarding the positive criteria, the Planning Board rejected Cofone's reasoning, finding that "[a]lthough the applicant's [p]lanner claimed that the project advances 'purpose (g)' [of the MLUL], the Board finds that the opposite is the case; this proposal clearly does <u>not</u> provide sufficient space in appropriate locations for residential uses."

The Planning Board further explained that the adoption of Cofone's reasoning "would lead to absurd results, allowing for the subdivision of the existing conforming lots in the zone . . . thereby completely destroying the zone plan."  Instead of benefitting the community or advancing the purposes of the zoning plan, "the Board [found] that the proposal serves only to advance the personal interests of Mr. Kaja in deriving additional profit from the site."

The Planning Board also found that plaintiff failed to satisfy the negative criteria, finding the lot area and lot width of the proposed lots were so "materially deficient" that "[t]his proposal clearly constitutes a substantial

A-3680-22

deviation from and impairment of the R-22 zone scheme requirements." It rejected Kaja's argument that similarly-sized lots on the south side of Parker Road and on Summers Avenue show that his proposal would not substantially impair the zoning plan, finding that "any such nonconforming lots predate the R-22 zoning scheme" and that "no evidence was presented by the applicant demonstrating that any of the few nonconforming lots were created . . . subsequent to the establishment of the R-22 zone."

Plaintiff filed a complaint in lieu of prerogative writs, challenging the Board's action as arbitrary, capricious, and unreasonable and contending that he was entitled to variances under N.J.S.A. 40:55D-70(c)(2). Plaintiff also moved to supplement the record to include a copy of the unpublished opinion, a copy of the transcript and resolution of an application to the Planning Board concerning a proposed subdivision at 63 Summers Ave (the "Chambers" matter).

Following a one-day trial, the trial court reserved decision. On April 21, 2023, Judge Linda Grasso Jones enter an order accompanied by a thorough statement of reasons, dismissing plaintiff's complaint with prejudice. In rejecting plaintiff's argument that the Planning Board failed to conduct an analysis concerning the bulk variances, the judge reasoned "[t]he Board determined, citing N.J.S.A. 50:55D-2(g), . . . that the application [did] not

provide sufficient space for the proposed residential uses and that the project in no way benefits the community but rather serves only to advance the private interest of plaintiff."

As to the negative criteria, the judge concluded that the Board found plaintiff's application would result in a "substantial detriment" to the public good and relied on the Board's explanation in the resolution. The judge also rejected plaintiff's argument that based on Cofone's testimony, an additional single-family home would not have a remarkable difference on traffic impact in the area. The judge reasoned "the Board is free to consider the arrangement of the driveways and the proximity to intersections, which is what the Board did here, and determine that the benefits [plaintiff'] claimed would result from the grant of the variance did not substantially outweigh the detriment to traffic." Lastly, citing to Cerdel Constr. Co., Inc. v. Twp. Comm. of E. Hanover Twp. in Morris Cnty., 86 N.J. 303, 306-07 (1981), the judge rejected plaintiff's argument that his proposal would not cause damage to the character of the neighborhood because his lot borders denser zones and is in proximity to nonconforming lots within the R-22 zone.

II.

On appeal, plaintiff raises the following points:

8

POINT ONE

THE WEST LONG BRANCH PLANNING BOARD'S DENIAL OF THE APPLICANT'S TWO LOT SUBDIVISION WITH SEVERAL BULK VARIANCES WAS ARBITRARY, CAPRICIOUS[,] AND UNREASONABLE AND SHOULD BE REVERSED.

POINT TWO

THE BOARD AND THE TRIAL COURT FAILED TO PROPERLY ASSESS THE NEGATIVE CRITERIA IMPLICATING THE EVALUATION OF GRANTING BULK VARIANCES.

A.    The Bulk Variances Requested for the Two-Lot Subdivision Will Not Cause Substantial Detriment to the Public Good.

B.    The Bulk Variances Requests which Accompany the Applicant's Proposed Two Lot Subdivision Will Not Substantially Impair the intent of the West Long Branch's Zone Plan or Zoning Ordinance:

After reviewing the record, we affirm for the reasons stated by Judge Grasso Jones. Accordingly, we need not address plaintiff's contentions at length. We add the following comments.

A zoning board's decisions "enjoy a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (citing Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002)).

9

"When reviewing a trial court's decision regarding the validity of a local board's determination, 'we are bound by the same standards as . . . the trial court.'" Jacoby v. Zoning Bd. of Adjustment of Bor. of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., L.L.C. v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)).

Giving all due deference to the decision of a board, the trial court must determine whether the board's resolution is supported by "substantial evidence in the record." Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 58-59 (1999). Additionally, the resolution cannot merely recite conclusory findings but must include a reasoned explanation, supported by the evidence presented. Loscalzo v. Pini, 228 N.J. Super. 291, 305 (App. Div. 1988).

"A board's decision 'is presumptively valid, and is reversible only if arbitrary, capricious, and unreasonable.'" Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998) (quoting Sica v. Bd. of Adjustment of Twp. of Wall, 127 N.J. 152, 166-67 (1992)); see also Kane Props., LLC v. City of Hoboken, 214 N.J. 199, 229 (2013). "We do not review the wisdom of [a planning board's] decision, rather . . . we merely 'determine whether the board could reasonably have reached its decision.'" Pullen v. Twp. of S. Plainfield Plan. Bd., 291 N.J. Super. 1, 6-7 (App. Div. 1996) (quoting Davis

A-3680-22

Enters. v. Karpf, 105 N.J. 476, 485 (1987)). "Accordingly, we will not disturb a board's decision unless we find a clear abuse of discretion." Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 82 (2002) (citing Med. Realty Assocs. v. Bd. of Adjustment, 228 N.J. Super. 226, 233 (App. Div. 1988)). "[T]he party 'attacking such action [has] the burden of proving otherwise.'" Id. at 81 (alteration in original) (quoting N.Y. SMSA Ltd. P'ship v. Bd. of Adjustment, 324 N.J. Super 149, 163 (App. Div. 1999)).

In order to obtain a (c)(2) variance, a plaintiff is required to establish a "substantial benefit." See N.J.S.A. 40:55D-70(c)(2). Thus, "[a] [(c)(2)] variance . . . must set forth what purposes of the MLUL will be advanced by granting the requested variance." Wilson v. Brick Twp. Zoning Bd. of Adjustment, 405 N.J. Super. 189, 198 (App. Div. 2009); see also Kaufmann v. Planning Bd. for Warren Twp., 110 N.J. 551, 562 (1988) (explaining a grant of a (c)(2) variance "must be rooted in the purposes of zoning and planning itself and must advance the purposes of the MLUL.").

Based on our scope of review, we hold plaintiff has not demonstrated the criteria necessary for a (c)(2) variance. It is well established that a grant of approval must "actually benefit the community in that it presents a better zoning alternative for the property." Kaufman, 110 N.J. at 563. Here, we agree with

11

Judge Grasso Jones that only plaintiff would derive a benefit for the subdivided lot and there is no apparent benefit for West Long Branch. Accordingly, we conclude there is sufficient support in the record that plaintiff's proposed improvements do not advance the purposes of municipal land use and may be a detriment to the intent and purpose of the R-22 zoning ordinance.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3680-22